UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

LESTER DECKER,

    Plaintiff,

v.

BARRICK GOLDSTRIKE MINES, INC.,

    Defendant.

3:12-cv-0287-LRH-WGC

ORDER

Before the court is defendant Barrick Goldstrike Mines, Inc.'s ("Barrick") motion for summary judgment. Doc. #27.[1] Plaintiff Lester Decker ("Decker") filed an opposition (Doc. #33) to which Barrick replied (Doc. #38).

**I.    Facts and Background**

Defendant Barrick is a mining corporation that operates an open pit mine near Elko, Nevada. Plaintiff Decker, who identifies as Native American, is a former employee of Barrick and worked as an equipment operator and passenger bus driver since 1992.

On the early morning on September 11, 2010, Decker caused an accident while transporting himself and his fellow shift crew out of the mine in one of Barrick's passenger buses. At the time of the accident, there were only two roads in and out of the mining area: the "Suzy" road and the "12th West" road. At a pre-shift meeting the night before, on September 10, 2010, the shift

---

[1] Refers to the court's docket number.

supervisor advised all night shift crew, including Decker, that part of the 12th West road had been reworked and blocked off for "haul traffic." *See* Doc. #27, Exhibit 9, Decker Depo., p.177:21-22.

The next morning, at approximately 6.34 a.m., Decker logged into the bus' monitoring system to begin the drive out of the mine.[2] Prior to driving, Decker did not clean the bus windshield. *See Id*. at p.182:25-183:10. Decker then took the 12th West road out of the mine despite the prior night's warning that part of the road had been reworked and closed. As he continued down the 12th West road, Decker was blinded by the rising sun. *Id*. at p.189:13-190:10. Decker did not stop, call for assistance, clean the windshield, or even use the bus' sun visor. Instead, Decker continued driving up the 12th West road. Operating sun-blinded, and unable to see a turn up ahead, Decker drove the bus into a dig face barrier. Several of the employees Decker was transporting suffered injuries including concussions, a fractured nose, lacerations, contusions, and sprains. Many of the injured workers lost multiple days of work and one employee missed fifty-five (55) days of work as a result of injuries sustained in the accident. Decker also caused roughly $23,000 in property damage to Barrick equipment. Doc. #27, Exhibit 33.

Barrick conducted an investigation into the accident which spanned several days. Barrick's investigation determined that Decker was responsible for the accident and had violated several company policies for passenger bus operation.[3] In particular, the Inthinc report generated during the investigation registered driving speeds in excess of the twenty-five mile per hour limit at the mine.

---

[2] All of Barrick's vehicles and machine equipment are equipped with Inthinc, a monitoring system which provides in-cab monitoring, GPS, speed recording, braking information, and other safety and recording features.

[3] At the time of the accident, Barrick had in place a series of policies relating to the operation of passenger buses entitled "Shift Change Procedures for Hot Change Buses." Doc. #35, Exhibit 3. The policies stated in pertinent part that (1) drivers will not operate any bus or vehicle with obstructed vision; (2) drivers will clean windshields if vision is obstructed, before transporting personnel; (3) drivers will stop in a safe area and clean windshields if vision becomes obstructed during operation; (4) drivers will not exceed posted speed limits or drive faster than conditions permit; and (5) drivers will follow all traffic patterns correctly and will obey all traffic control and warning signs. *Id*. The policies further provided that "[a]ny violation of the Standard Operating Procedures may result in disciplinary action up to and including termination." *Id*.

Doc. #27, Exhibit 31. Likewise, Decker drafted a post-incident statement in which he admitted that he was unable to see in front of the bus while he was driving at the time of the accident. Doc. #27, Exhibit 32. As a consequence of the accident and these infractions, Barrick terminated Decker pursuant to its accelerated discipline policy.[4]

Decker challenged his termination under Barrick's appeal policy. Barrick's appeal process permits an employee to challenge a termination to either a panel of his peers or directly to the general manager. Doc. #27, Exhibit 36. Decker chose a panel review. Pursuant to Barrick's appeal policy "[t]he panel can recommend reversal or modification of the termination decision to the General Manager," but the general manager makes the final decision regarding termination. *Id*. After reviewing the factual circumstances underlying the accident, the appeals panel recommended against Decker's termination and passed their recommendation on to the general manager. Doc. #27, Exhibit 38. Randy Buffington ("Buffington"), Barrick's general manager, considered the panel's recommendation but ultimately upheld Decker's termination. In a post-review letter, Buffington stated that Decker's termination "was a result of [his] violation of the standards of conduct policy, '*Safety violations that endanger life or limb, even if the action does not result in injury*.' Violation of our division's standard operating procedures, '*The assigned driver will not operate any bus or vehicle with obstructed vision*.' As well as a fundamental breach of trust." Doc. #35, Exhibit 9.

In response to his termination, Decker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his age, race, color, and national origin. After receiving a right to sue letter, Decker filed an initial complaint on

---

[4] Barrick also had in place at the time of the accident an accelerated discipline policy. *See* Doc. #35, Exhibit 2. That policy stated in pertinent part that: "[D]epending upon personnel and situational factors, a first time violation may result in further discipline up to and including termination of employment" for violations of company policy including "[u]nauthorized crossing of guards, berms, barriers, barricades, or roadblocks" and "[d]riving in excess of the speed limit or at speeds inappropriate for conditions in a company vehicle on or off site." *Id*.

3

May 29, 2012. Doc. #1. Subsequently, on July 12, 2012, Decker filed an amended complaint alleging two causes of action: (1) age discrimination in violation of the ADEA; and (2) race, color, and national origin discrimination in violation of Title VII. Doc. #5. Thereafter, Barrick filed the present motion for summary judgment on both claims. Doc. #27.

**II.     Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

### III. Discussion

#### A. Age Discrimination

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); *accord* N.R.S. § 613.330(1)(a). To prove a *prima facie* case of age discrimination, a plaintiff must show that: (1) he was at least forty years old; (2) he was performing his job satisfactorily; (3) he was discharged; and (4) he was replaced by a substantially younger employee with equal or inferior qualifications. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

In its motion for summary judgment, Barrick concedes that Decker was over forty years of age and that his employment was terminated. *See* Doc. #27. However, Barrick contends that Decker has failed to provide any evidence that he was performing his job satisfactorily at the time of his termination, and thus, he fails to state a *prima facie* case of age discrimination. The court agrees.

It is undisputed that at the time of his termination, Decked caused an accident which resulted in a range of injuries to several employees as well as over $23,000 in property damage. It is further undisputed that Decker violated multiple Barrick safety policies including, but not limited to: (1) driving with obstructed vision, (2) failing to clean the windshield before driving, and (3) exceeding the speed limit for the roads. Moreover, Decker continued to drive with obstructed vision even after confirming with the other passengers that they could also not see out of the bus. *See* Doc. #27, Exhibit 9, Decker Depo., p.193:24-194:4. Therefore, the court finds that Decker has failed to state a *prima facie* case of age discrimination as a matter of law. *See e.g., Guerrero v. Beverly Hills Hotel*, 1994 U.S. Dist. LEXIS 21757 (C.D. Cal. 1994) (holding that a single failure to follow established policy is sufficient to show that an employee was not meeting the employer's legitimate expectations at the time of termination). Accordingly, the court shall grant Barrick's motion as to Decker's age discrimination claim.

### B. Race, Color, and National Origin Discrimination

Title VII prohibits discrimination against an employee or an applicant for employment on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a). To prevail on a Title VII discrimination claim, a plaintiff must establish a *prima facie* case of discrimination by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff can establish a *prima facie* case of discrimination through the burden shifting framework set forth in *McDonnell Douglas*. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for his position and was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)); *see also, Bodett v. Coxcom, Inc.*, 366 F.3d 726, 743 (9th Cir. 2004); *Orr v. Univ. Med. Ctr.*, 51 Fed. Appx. 277 ("An implicit part of the "qualification" requirement is that the plaintiff was performing her job satisfactorily).

If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. *McDonnell Douglas*, 411 U.S. at 802. If the defendant provides such a justification, the burden shifts back to the plaintiff to show that the defendant's justification is a mere pretext for discrimination. *Id.* at 804.

In its motion, Barrick once again concedes that Decker, as a Native American, was a member of a protected class and that he was terminated from his employment. *See* Doc. #27. However, Barrick contends that Decker has failed to establish that he was performing his job

satisfactorily at the time of his termination or that similarly situated non-Native Americans were treated more favorably than he was, after similar accidents. The court agrees.

As addressed above, Decker has failed to establish that he was performing his job satisfactorily at the time of his termination. Further, Decker has failed to establish that non-Native American employees who engaged in similar conduct - causing accidents that involved injuries to other employees or significant property damage - were treated more favorably.

Only two non-Native American employees, Mark Smith ("Smith") and Rex Goff ("Goff"), have been identified as having similar accidents. The evidence before the court establishes that neither Smith nor Goff were treated more favorably that Decker. In fact, both employees had their employment end as a result of their accidents; Smith was forced to resign after running an empty passenger bus into a dozer and Goff was terminated after entering an active mine area and bypassing a barricade which resulted in his and another employee's hospitalization. Thus, the evidence before the court establishes that non-Native American employees were not treated more favorably than Decker. Therefore the court finds that Decker has failed to establish a *prima facie* Title VII race, color, or national origin discrimination claim against Barrick. Accordingly, the court shall grant Barrick's motion for summary judgment.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. #27) is GRANTED. The clerk of court shall enter JUDGMENT in this action in favor of defendant Barrick Goldstrike Mines, Inc. and against plaintiff Lester Decker.

IT IS SO ORDERED.

DATED this 19th day of December, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE